**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re: CASE NO: 6:19-bk-05385-CCJ
CHAPTER 13

KURT ALLEN STRATHMAN
SHERRY SUE WARD-STRATHMAN

DEBTOR(S)
_____________________________________________/

**FIFTH THIRD BANK SUCCESSOR BY MERGER TO FIFTH THIRD MORTGAGE COMPANY'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**(Re: 643 Silver Creek Drive, Winter Springs, FL 32708)**

**NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING**

**Pursuant to Local Rule 2002-4, the Court will consider this the relief request in this paper without further notice or hearing unless a party in interest files a response within 21 days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.**

**If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at 400 W. Washington Street, Suite 5100, Orlando, FL 32801, and serve a copy on the movant's attorney, Patrick Hruby, Esq., at Brock & Scott, PLLC, 2001 Northwest 64th Street, Suite 130 Fort Lauderdale, FL 33309, and any other appropriate persons within the time allowed.**

**If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or consider the response and grant or deny the relief requested without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

Fifth Third Bank Successor by merger to Fifth Third Mortgage Company ("Secured Creditor"), its successors and assigns, files this *Motion for Relief from the Automatic Stay*, and in support thereof states as follows:

1. The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, Fed. R.

Bankr. P. 4001(a) and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure and the laws of the United States of America.

2.      The Debtor filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code on August 15, 2019.

3.      Secured Creditor holds a security interest in the Debtor's real property located at 643 Silver Creek Drive, Winter Springs, FL 32708 (the "Property"), by virtue of a Mortgage which was recorded on March 12, 2014, in Official Records Book 8232, at Page 145, of the Public Records of Seminole County, Florida (the "Mortgage").  The Mortgage secures a Note in the amount of $233,900.00 (the "Note").  A copy of the Mortgage, together with the Note and Assignments, as applicable, is attached hereto as **Exhibit A**.

4.      The Mortgage gives Secured Creditor a lien on the Property, which is legally described as:

> **All that certain lot or parcel of land situate in the County of Seminole, State of Florida, and being more particularly described as follows:**
>
> **Lot(s) 5, North Orlando Ranches, Section 2A, according to the plat thereof, recorded in Plat Book 12, Page(s) 40 of the Public Records of Seminole County, Florida**
>
> **BEING property which, by Deed dated November 15, 2005, and recorded among the Land Records of the County of Seminole, State of Florida, in Liber No. 6047, folio 139, was granted and conveyed by David Behbood unto Kurt Strathman and Sherry Strathman.**

5.      As of August 20, 2019, the Debtor is indebted to Secured Creditor in the amount of $260,878.83 principal balance, with interest accruing, plus other fees and costs advanced by Secured Creditor pursuant to the loan documents.  Post-Petition payments have been in default since March1, 2018.

6.      According to the Schedule A, the value of the Property is $270,110.00 Therefore, there is little or no equity in the Property for the benefit of unsecured creditors of the estate.

7.      Secured Creditor's interest in the Property is being significantly jeopardized by the Debtor's failure to make regular mortgage payments while Secured Creditor is prohibited from pursuing its lawful remedies to protect such interest.  Thus, the Debtor has failed to adequately protect the interest of Secured Creditor.

8.      Therefore, Secured Creditor maintains that cause exists pursuant to 11 U.S.C. § 362(d)(1) for the automatic stay to be lifted.

9.      Pursuant to 11 U.S.C. § 362(e), Secured Creditor requests that, in the event a hearing is necessary, said hearing be held within thirty (30) days.

10.     Secured Creditor request that the Court waive the fourteen (14) day stay set forth in Bankruptcy Rule 4001(a)(3), so that Secured Creditor can pursue its in rem remedies without further delay.

11.     Secured Creditor requests that any communication by Secured Creditor in connection with proceeding against the Property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential forbearance agreement, loan modification, refinance agreement, loss mitigation agreement or other loan workout, may be sent directly to the Debtor.

12.     Secured Creditor has incurred attorneys' fees of $750.00 and costs of $181.00 as a result of the necessity of filing this Motion.  Said fees and costs are recoverable as part of the debt pursuant to the loan documents but shall not be a personal liability of the Debtor.

13.     Secured Creditor requests that the Court waive the notice requirements of Bankruptcy Rule 3002.1 as to Secured Creditor and the Trustee.

**WHEREFORE**, Secured Creditor respectfully requests that the automatic stay be lifted so that Secured Creditor may be permitted to protect its security interest in the Property outside

the bankruptcy forum; that in the event a hearing is necessary, said hearing be held within thirty (30) days; that the 14 day stay be waived under Rule 4001(a)(3); that Secured Creditor be permitted to contact the Debtor for the reasons stated; that Secured Creditor be awarded in rem Attorneys' fees and cost; that the Court waive the notice requirements of Bankruptcy Rule 3002.1 as to Secured Creditor and the Trustee; and such other and further relief as the Court may deem just and proper.

BROCK & SCOTT, PLLC
Attorney for Secured Creditor
2001 Northwest 64th Street, Suite 130
Fort Lauderdale, FL 33309
Phone: 813-342-2200
Fax: 954-618-6954
Floridabklegal@Brockandscott.com

/s/ Patrick Hruby
______________________________________
PATRICK HRUBY, ESQUIRE
Florida Bar No. 0088657

**I HEREBY CERTIFY** that a true copy hereof has been served via U.S. mail, first-class postage prepaid, to:

*Debtor*
Kurt Allen Strathman
643 Silver Creek Drive
Winter Springs, FL 32708

*Joint Debtor*
Sherry Sue Ward-Strathman
643 Silver Creek Drive
Winter Springs, FL 32708

**I HEREBY CERTIFY** that a true copy hereof has been served electronically to:

*Debtor's Counsel*
Jeffrey S Badgley

801 N. Magnolia Avenue
Suite 107
Orlando, FL 32803

*Trustee*
Emerson C Noble
Post Office Box 622798
Oviedo, FL 32762-2798

*U.S. Trustee*
United States Trustee - ORL7/13
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

this 10th day of September, 2019.

BROCK & SCOTT, PLLC
Attorney for Secured Creditor
2001 Northwest 64th Street, Suite 130
Fort Lauderdale, FL 33309
Phone: 813-342-2200
Fax: 954-618-6954
Floridabklegal@Brockandscott.com

/s/ Patrick Hruby
_______________________________
PATRICK HRUBY, ESQUIRE
Florida Bar No. 0088657

Exhibit A Case 6:19-bk-05385-CCJ Doc 12 Filed 09/10/19 Page 6 of 21

# FIXED/ADJUSTABLE RATE NOTE

(LIBOR One-Year Index (As Published In *The Wall Street Journal*)-Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| March 12, 2014 | Winter Springs | FLORIDA |
|---|---|---|
| [Date] | [City] | [State] |

643 Silver Creek Dr
Winter Springs, FL 32708
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 233,900.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Fifth Third Mortgage Company .

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.250 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on May 01, 2014 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on April 01, 2044 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 630170, Cincinnati, OH 45263

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $1,150.65 . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of April, 2019 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR - Single Family - Fannie Mae Uniform Instrument - Florida

Wolters Kluwer Financial Services
VMP®-168N(FL) (1302) Form 3528 6/01
Page 1 of 5 Initials:

The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and one quarter percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 6.250 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 9.250 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR - Single Family - Fannie Mae Uniform Instrument - Florida

Form 3528 6/01

VMP®-168N(FL) (1302) Page 3 of 5 Initials:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal) Kurt A. Strathman -Borrower

_____(Seal) Sherry Strathman -Borrower

_____(Seal) -Borrower

_____(Seal) -Borrower

_____(Seal) -Borrower

_____(Seal) -Borrower

_____(Seal) -Borrower

_____(Seal) -Borrower

[Sign Original Only]

Loan origination organization UVS Inc
NMLS ID 331734
Loan originator Frederic Abitbol
NMLS ID 331653

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR - Single Family - Fannie Mae Uniform Instrument - Florida

VMP®-168N(FL) (1302) Page 5 of 5 Form 3528 6/01

WITHOUT RECOURSE
PAY TO THE ORDER OF

FIFTH THIRD MORTGAGE COMPANY

BY: ____________________
Stephen Johnson, SVP

MARYANNE MORSE, SEMINOLE COUNTY
CLERK OF CIRCUIT COURT & COMPTROLLER
BK 08232 Pgs 0145 - 153; (9pgs)
CLERK'S #
RECORDED 03/25/2014 08:39:29 AM
MTG DOC TAX 818.65
INTANG TAX 467.80
RECORDING FEES 78.00
RECORDED BY H DeVore

Return To:

Fifth Third Mortgage Company
5001 Kingsley Drive, MD:1MOB3A
Cincinnati, Ohio 45227

RETURN TO:
ALL STAR TITLE
6225 SMITH AVENUE, SUITE 202
BALTIMORE, MD 21209
1-800-580-0677

[Space Above This Line For Recording Data]

# MORTGAGE

**DEFINITIONS**

Words used in multiple sections of this document are defined below and in the Master Mortgage Form (as herein after defined).

(A) "Security Instrument" means this document, which is dated March 12, 2014 together with all Riders to this document.

(B) "Borrower" is Kurt A. Strathman and Sherry Strathman, AKA Kurt Strathman, husband and wife. Borrower is the mortgagor under this Security Instrument.

(C) "Lender" is FIFTH THIRD MORTGAGE COMPANY. Lender is a corporation organized and existing under the laws of FLORIDA. Lender's address is 38 FOUNTAIN SQUARE PLAZA, CINCINNATI, OH 45263.

(D) "Note" means the promissory note signed by Borrower and dated March 12, 2014. The Note states that Borrower owes Lender Two Hundred Thirty Three Thousand Nine Hundred And Zero/100 Dollars (U.S. $ 233,900.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than April 01, 2044.

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider [ ] Condominium Rider [ ] Second Home Rider
[ ] Balloon Rider [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider [ ] Other(s) [specify]

Initials

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:
(I) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and

(ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of Seminole.

Parcel ID 02213050300000050- which currently has the address of 643 Silver Creek Dr, Winter Springs, FL 32708 ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

MASTER MORTGAGE FORM:

All terms of that certain master mortgage form ("Master Mortgage Form" recorded June 12, 2007 pursuant to Florida Statutes section 695.02 in the office of the Seminole County Recorder, Instrument No 2007087045, O.R. Book 6725., page 0726-738 by Fifth Third Mortgage Company, by Robert Lewis, are by this reference incorporated as fully and to the same extent as if set forth and contained herein.

COPY:

A copy of the Master Mortgage Form has been furnished to the mortgagor prior to the execution of this Security Instrument and mortgagor hereby acknowledges receipt of the same by signing at the end of this instrument.

CERTAIN OTHER ADVANCES:

In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, Seminole County, Florida for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrowers should have paid as provided in this Security Instrument.

Initials

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument (including, but not limited to the Master Mortgage Form) and in any Rider executed by Borrower and recorded with it. If for any reason the Master Mortgage Form shall not be deemed a part of this Security Instrument, this three (3) page instrument, plus any Rider(s) and attached legal description shall stand by itself as a mortgage document, binding on Borrower(s) for the benefit of Fifth Third Mortgage Company, its successors and assigns.

Kurt A. Strathman (Seal)

Witness CD Smith ~~(Seal)~~

Sherry Strathman (Seal)

Witness A Baumgartner (Seal)

(Seal)

(Seal)

(Seal)

(Seal)

STATE OF FL

On this 12th March 2014, before me a Notary Public in and for said County and State, personally appeared Kurt A. Strathman and Sherry Strathman the individual(s) who executed the foregoing instrument and acknowledge that he/she did examine and read the same and did sign the foregoing instrument, and that the same is his/her free act and deed. IN WITNESS HEREOF, I have hereunto set my hand and official seal.

JANET LYNN
Notary Public - State of Florida
My Comm. Expires Aug 29, 2016
Commission # EE 215805
(Seal)

Notary Public, Seminole County

8/29/16 Janet Lynn

My Commission Expires:
State of FL

This instrument was prepared by: FIFTH THIRD MORTGAGE COMPANY
38 FOUNTAIN SQUARE PLAZA
CINCINNATI, OHIO 45263

Initials

# EXHIBIT A
# LEGAL DESCRIPTION OF SUBJECT PROPERTY

The legal description for the property located at: 643 Silver Creek Dr, Winter Springs, FL 32708 is as follows:

Initials 

# Exhibit A

All that certain lot or parcel of land situate in the **County of Seminole**, State of Florida, and being more particularly described as follows:

Lot(s) 5, North Orlando Ranches, Section 2A, according to the plat thereof, recorded in Plat Book 12, Page(s) 40 of the Public Records of Seminole County, Florida

BEING property which, by Deed dated November 15, 2005, and recorded among the Land Records of the County of Seminole, State of Florida, in Liber No. 6047, folio 139, was granted and conveyed by David Behbood unto Kurt Strathman and Sherry Strathman.

(Page 6 of 10)

# FIXED/ADJUSTABLE RATE RIDER

**(LIBOR One-Year Index (As Published In *The Wall Street Journal*)- Rate Caps)**

THIS FIXED/ADJUSTABLE RATE RIDER is made this 12th day of March, 2014 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to Fifth Third Mortgage Company

("Lender") of the same date and covering the property described in the Security Instrument and located at: 643 Silver Creek Dr, Winter Springs, FL 32708

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of 4.250 %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of April, 2019 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family - Fannie Mae Uniform Instrument**

**Form 3187 6/01**

Wolters Kluwer Financial Services

VMP®-168R (0807)

Page 1 of 4 Initials:

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and one quarter percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 6.250 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 9.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

> Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a

bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(Page 9 of 10)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_______________ (Seal) -Borrower
Kurt A. Strathman

_______________ (Seal) -Borrower
Sherry Strathman

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family -

VMP®-168R (0807) Page 4 of 4

MARYANNE MORSE
CLERK OF COURT & COMPTROLLER
SEMINOLE COUNTY
1750 E LAKE MARY BLVD
SANFORD, FL 32773
407-665-4411

DATE:03/25/2014
TIME:08:39:29 AM
RECEIPT

ALL STAR TITLE

ITEM -01 M 08:39:29 AM

| FILE: | BK/PG:0 8232/0145 |
|---|---|
| RECORDING FEE | 78.00 |
| MTG DOC TAX | 818.65 |
| INTANGIBLE TAX | 467.80 |
| Sub. Total | 1,364.45 |

--------------------------

AMOUNT DUE: $1,364.45
PAID CHECK: $1,364.45
Check #:58388 $1,364.45
TOTAL PAID: $1,364.45

REC BY:HDEVORE
DEPUTY CLERK

Have a Nice Day